1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   MARILYN S. CLARK,                    No. CIV S-05-1001-CMK

12              Plaintiff,

13        vs.                           <u>MEMORANDUM OPINION AND ORDER</u>

14   JO ANNE B. BARNHART,
     Commissioner of Social Security,

15
                Defendant.
16
     _____/
17

18            Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the consent of the parties, this case is before the undersigned for final decision on

21   plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-motion for summary

22   judgment (Doc. 17).

23   / / /

24   / / /

25   / / /

26   / / /

                                              1

# I. BACKGROUND

Plaintiff applied for disability insurance benefits on November 30, 2000,[1] based on disability.  In her application, plaintiff claims that her impairment began on April 24, 2000.  Plaintiff claims her disability consists of a combination of "a heart condition, stress, and depression."  Plaintiff also has carpel tunnel syndrome in both wrists.  Plaintiff is a United States citizen born July 15, 1945, with a high school education.

## A.     Summary of the Evidence[2]

Plaintiff alleges she has been disabled since April 25, 2000.  On that date, plaintiff was hospitalized for chest pain, which diagnostic studies revealed to be a myocardial infarction.  Plaintiff was treated until her condition stabilized.  Plaintiff was discharged on April 27, 2000.   The record reveals that plaintiff believed that her heart attack was directly related to stressors at her job.  Plaintiff pursued a worker's compensation claim against her employer, Sam's Western Wear, where she began working in November 1994 as a cashier and buyer.

In December 2000 plaintiff was treated in an emergency room after falling down stairs and fracturing her right lower leg.  X-rays taken in January 2001 showed that plaintiff's leg fracture was healing.  Subsequent progress notes indicate that plaintiff complained of depression and anxiety at the prospect of returning to work.

On January 23, 2001, plaintiff was examined by C. Diane DeSilva,, M.D., a psychiatrist, and Charles Sharp, Ph.D., a psychologist, at the request of her worker's compensation attorney.  A February 2001 mental assessment report prepared after this examination indicated mild to moderate depression, psychomotor retardation, slowed speech,

---

[1]     In her brief, plaintiff states she filed her application on November 16, 2000.  She signed the application, however, on November 30, 2000, and this is the date recited in the Commissioner's decision.

[2]     This summary is derived from the facts outlined in the ALJ's January 25, 2005, hearing decision, at pages 2-4, which plaintiff does not challenge save for "items of evidence . . . omitted and/or minimized by the ALJ," which plaintiff sets forth in her brief and which the court includes here.

1    tearfulness, mild to moderate anxiety, and feelings of helplessness.  There were no indications of

2    abnormal thought processes.  Plaintiff was assessed with experiencing a major single event

3    depressive disorder with a Global Assessment of Functioning ("GAF") of 55 on a scale of 1 to

4    100.

5            Plaintiff's treating physician at Kaiser referred her to orthopedic surgeon Ralph

6    N. Steiger, M.D., in June 2001 for evaluation of plaintiff's complaints of right hand pain,

7    numbness, and tingling which increased with grasping, and pain and tingling in the left hand

8    which increased with lying on that side.  Dr. Steiger's examination revealed tenderness and

9    positive Finkelstein's and Tinel's signs, bilaterally, with reduced range of motion in both wrists.

10   Dr. Steiger opined these observations were consistent with overuse syndrome, carpal tunnel

11   syndrome, and DeQeurvain's tendonitis.  Dr. Steiger recommended further diagnostic studies,

12   but did not comment on plaintiff's capabilities.

13           On May 29, 2001, plaintiff returned to Drs. DeSilva and Sharp for mental

14   evaluation.  In their June 7, 2001, report, plaintiff was given the same assessment as in the

15   February report.  Specifically, plaintiff was assessed with major depressive disorder with a GAF

16   of 55.  Subsequent treatment notes from Kaiser indicate that, by late 2001, plaintiff reported

17   feeling better with medications.  In December 2001 plaintiff enrolled in art school and, when

18   seen in February 2002, she reported that she was still going to art school and feeling better than

19   she had during the past year.  Plaintiff still complained of some depression and anxiety, but

20   continued to attend school.  A progress note from April 1, 2003, indicates that plaintiff was

21   doing well and had decided to sell her house and move to northern California where she owned

22   some land.

23           Kaiser outpatient records from January 2004 indicate that plaintiff was not

24   experiencing chest pain and that she was obese at 215 pounds (her weight of 5'4" led to a body

25   mass index of 37).  Plaintiff's blood pressure was elevated and she indicated that she had not

26   been taking her medications for the past six months.

In August 2004 plaintiff was seen again at Kaiser for complaints of mild lower back pain.  An x-ray was taken which showed mild arthritis with some curvature of the thoracic spine.  Plaintiff was also evaluated for right hand and finger numbness.  Examination revealed right thenar muscle atrophy, normal muscle strength in the upper extremities, and normal reflexes.  An electrodiagnostic study suggested severe right and moderate left neuropathy across the wrists consistent with carpal tunnel syndrome.  A surgical evaluation was considered.

Plaintiff was evaluated in late August 2004 by agency consultative examining physician, Satish Sharma, M.D., an internal medicine and neurology specialist.  Dr. Sharma noted that plaintiff was not in acute distress.  At the time of this evaluation, plaintiff complained of pain with forward flexion of the lumbar spine.  Dr. Sharma's examination, however, revealed no paraspinous muscle spasms and straight-leg raising was normal.  Strength in all muscle groups was normal, as were sensation, reflexes, and gait.  Dr. Sharma did note mild swelling of the finger joints and pain with right knee flexion possibly indicating early osteoarthritis.  As to plaintiff's capabilities, Dr. Sharma opined that plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds.  Plaintiff was assessed with the ability to stand and/or walk for six hours in an eight-hour day.  As to sitting, Dr. Sharma stated that plaintiff cannot sit in one position for more than 30 minutes at a time and must periodically alternate sitting and standing.  Plaintiff was also assessed with a limitation for pushing and pulling.  Dr. Sharma opined that Plaintiff could occasionally climb, balance, and stoop, but that she should never kneel, crouch, or crawl.  Plaintiff was assessed with limited manipulative ability for only occasional fingering and handling, but unlimited ability for reaching in  all directions and feeling.  Dr. Sharma noted no visual, communicative, or environmental limitations.

In addition to these facts, plaintiff refers the court to two electrodiagnostic studies of her upper extremities.  An August 14, 1998 study, reported by Catherine Potyondy, M.D., revealed abnormalities bilaterally in plaintiff's upper extremities representing advanced right and mild left carpel tunnel syndrome.  The other study, from August 11, 2004, reported by Ling Shi-

Bertsch, M.D., at Kaiser, suggested: (1) a severe right motor and sensory median neuropathy across the wrist with ongoing axonal injury in the right APB muscle; and (2) a moderate left sensory and motor median neuropathy across the wrist with both demyelinating and axonal features.

Plaintiff also points to a January 9, 2001, mental residual functional capacity assessment prepared by agency reviewing psychiatrist Robert Paxton, M.D.  Dr. Paxton assessed plaintiff as being moderately limited with respect to the following activities: (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; and (3) ability to interact appropriately with the general public.  As to all other categories of mental functioning, Dr. Paxton found no significant limitation.  Dr. Paxton concluded his assessment by stating that plaintiff could sustain simple repetitive tasks with adequate pace and persistence and that she could adapt and relate to co-workers and supervisors.  Injecting ambiguity into his report, Dr. Paxton also appears to have stated that plaintiff could not work with the public.

Finally, the court notes that the record contains a physical residual functional capacity assessment prepared on January 10, 2001, by agency reviewing physician S.C. Swan, M.D.  Dr. Swan assessed plaintiff as capable of occasionally lifting and carrying 50 pounds, and frequently lifting and carrying 25 pounds.  He also opined that plaintiff could stand and/or walk for six hours in an eight-hour day, and that she was unlimited as to push/pull.  Dr. Swan also stated that no postural, manipulative, visual, communicative, or environmental limitations were established.  In his assessment, Dr. Swan noted that no treating or examining source statements were in the file.

**B.    Procedural History**

Plaintiff's claim was initially denied.  Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on April 23, 2002, before Administrative Law Judge ("ALJ") Mason D. Harrell, Jr.

/ / /

In his May 7, 2002, decision, the ALJ made the following findings:

1.    The claimant met the disability insured status requirements of the Act on April 24, 2000, the date the claimant stated she became unable to work, and continues to meet them through the date of this decision;

2.    The claimant has not engaged in substantial gainful activity since the alleged onset date of disability;

3.    The medical evidence establishes that the claimant has severe physical impairments consisting of dysthymia, status post myocardial infarction, and carpal tunnel syndrome, which more than minimally restricts the ability to perform basic work related activity;

4.    The claimant does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4;

5.    The claimant's subjective complaints do not credibly establish a residual functional capacity less than that found herein;

6.    The claimant retains the residual functional capacity to perform a wide range of medium work; specifically, the claimant is capable of lifting 50 pounds occasionally and 25 pounds frequently, standing and/or walking for six hours out of an eight hour day and sitting for six hours out of an eight hour day; the claimant is precluded from work which requires power twisting or grasping;

7.    The claimant is able to perform her past relevant work as a sales clerk/cashier as customarily performed in the national economy; and

8.    The claimant was not under a disability . . . at any time through the date of this decision.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to benefits. On January 16, 2003, the Appeals Council issued an order receiving into evidence a letter dated November 22, 2002, from plaintiff's counsel and a letter dated November 8, 2002, from plaintiff. The Appeals Council denied review that same day.

Plaintiff filed an action for judicial review in the United States District Court for the Central District of California on March 10, 2003. On September 11, 2003, the parties entered into a stipulation for remand. The stipulated remand order stated:

The Commissioner has agreed to a voluntary remand of this case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, which will include directing the Administrative Law Judge to

further evaluate Plaintiff's physical and mental residual functional
capacity.

On November 24, 2003, the Appeals Council issued an order after remand directing the ALJ to

further evaluate plaintiff's physical and mental residual functional capacity.  Specifically, the

Appeals Council's remand order stated:

> The record shows that on June 20, 2001, Ralph N. Steiger, M.D., a Board-
> certified orthopedic surgeon, performed a surgical consultative
> examination of the claimant's wrists, and observed significant reduction in
> her right hand gripping ability, as well as reduced dorsiflexion and palmar
> flexion in both wrists.  Furthermore, the Finkelstein's and Tinel's tests
> were positive.  Dr. Steiger diagnosed the claimant with (1) overuse
> syndrome, affecting both extremities, (2) carpal tunnel syndrome, right
> wrist, (3) DeQeurvain's tendonitis affecting both wrists, and (4) possible
> carpal tunnel syndrome in the left wrist.  Apparently, it was based on this
> examination that the Administrative Law Judge found that the claimant
> was precluded from power twisting or grasping; however, he did not point
> to any substantial evidence to support his residual functional capacity
> [finding], and Dr. Steiger did not provide any comment regarding the
> claimant's ability to perform work-related activities.
>
> Moreover, the hearing decision contains a misstatement of fact with
> respect to the medical expert's testimony.  The hearing decision stated that
> the medical expert testified that the claimant's disability was for less than
> 12 months because after November 2000, the "claimant was feeling much
> better and was attending art school."  The record indicates, however, that
> the medical expert, who testified regarding the claimant's mental
> impairments, did not testify that the claimant was attending art school
> after November 2000, and information in the record indicates that the
> claimant did not sign up for art school until December of 2001.

A second hearing was held before a different ALJ – L. Kalei Fong – on July 12,

2004.  On September 20, 2004, the ALJ sent plaintiff's counsel a letter indicating that he had

obtained additional evidence in the form of a report from Dr. Sharma, an agency consultative

physician who examined plaintiff in August 2004.  The ALJ enclosed a copy of Dr. Sharma's

report and advised plaintiff of her options.  In response, plaintiff requested that the ALJ either

issue a fully favorable decision or schedule another hearing to allow plaintiff an opportunity to

present "testimony from a medical expert such as [Dr. Sharma]."  No additional hearing was

scheduled and, instead, the ALJ issued an unfavorable decision.

In his January 25, 2005, decision, the ALJ made the following findings:

1.    The claimant met the disability insured status requirements of the Act on April 24, 2000, the date the claimant stated she became unable to work, and continues to meet them through the date of this decision;

2.    The claimant has not engaged in substantial gainful activity since April 24, 2000;

3.    The medical evidence establishes that the claimant has severe status post-myocardial infarction; bilateral carpal tunnel syndrome; obesity; hypertension; mild thoracic spine arthritis; and major depressive disorder, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4;

4.    The claimant's testimony cannot be entirely credited, including her alleged limitation to 15 minutes of sitting and very little walking;

5.    The claimant has the residual functional capacity to perform the requirements of work including lifting and carrying from 10 pounds frequently to 20 pounds occasionally, standing and/or walking for about 6 hours during an 8-hour workday, periodic alternate sitting and standing, no kneeling, crouching, or crawling, occasional climbing, balancing, stooping, handling and fingering, and moderate limitations in understanding, remembering and carrying out detailed instructions and in interacting appropriately with the general public;

6.    The claimant is unable to perform her past relevant work;

7.    The claimant's residual functional capacity for the full range of light work is reduced by her grasping and fingering limitations;

8.    The claimant is 59 years old, which is defined as advanced age;

9.    The claimant has a high school education;

10.   The claimant has acquired work skills, such as clerical skills, which she demonstrated in past work, and which, considering her residual functional capacity, can be applied to meet the requirements of semi-skilled work functions of other work;

11.   Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 and Rule 202.07, Table No. 2, Appendix 2, Subpart P, Regulation No. 4, would direct a conclusion of not disabled;

12.   Although the claimant's additional non-exertional limitations do not allow her to perform the full range of light work, using the above-cited rule as a framework for decision-making, there are a significant number of jobs in the national economy which she could perform . . .; and

8

13.     The claimant was not under a disability . . . at any time through the date of this decision.

After the ALJ's January 25, 2005, decision became the Commissioner's final decision pursuant to 20 C.F.R. § 404.984(d), this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

## III.  DISCUSSION

In her motion for summary judgment, plaintiff argues that: (1) the ALJ erred with respect to analysis of the medical opinions; (2) the ALJ improperly discredited plaintiff's credibility; (3) the ALJ's hypothetical questions posed to the vocational expert did not accurately reflect plaintiff's capabilities; and (4) the ALJ erred by not allowing plaintiff to obtain additional medical expert testimony in response to Dr. Sharma's report.

### A.    Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough

summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to the ALJ's analysis of the medical opinions, plaintiff argues that the ALJ improperly discounted Dr. Sharma's findings with respect to her upper extremities.  Plaintiff also argues that the ALJ improperly ignored Dr. Sharma's limitation for periodically alternating between sitting and standing.  Finally, plaintiff argues that the ALJ improperly disregarded Dr. Paxton's limitation for working with the public.

        1.    Dr. Sharma

In a medical source statement concerning plaintiff's physical ability to do work-related activities, attached to his August 30, 2004, report, Dr. Sharma opined the following physical limitations: (1) only occasional handling and fingering; and (2) must periodically alternate between sitting and standing, sitting in one position for no more than 30 minutes at a time.  As to Dr. Sharma, the ALJ stated:

> . . . To obtain a current assessment the undersigned ordered a consultative internal medicine examination in August 2004, during which the claimant was noted to be in no acute distress.  She complained of pain with forward flexion of the lumbar spine but there were no paraspinous muscle spasms and straight-leg raising was negative.  Strength in all muscle groups was normal, as were sensation, reflexes, coordination, and gait. There was mild swelling of the finger joints and pain with right-knee flexion possibly indicating early osteoarthritis. . . . [Dr. Sharma's] consultative examination also supports the conclusion that the claimant's impairments are not of the severity contemplated in the Listing of Impairments.

1         * * *

2         The undersigned gives considerable weight to the medical source
statement provided by [Dr. Sharma], who found that the claimant

3 remained capable of lifting and carrying from 10 pounds frequently to 20
pounds occasionally, standing and/or walking for about 6 hours in an 8-

4 hour workday, that she must periodically alternate between sitting and
standing to relieve her discomfort and that she could do no kneeling,

5 crouching and crawling with occasional climbing, balancing and stooping
due to her low back and knee pain and that she is limited to occasional

6 handling and fingering, and otherwise unlimited in her functional
capabilities.  This assessment is supported by the claimant's carpal tunnel

7 syndrome, confirmed through recent physical examination and
electrodiagnostic studies. . . .  Given the limitations set forth [in Dr.

8 Sharma's evaluation] regarding slight limitations with grasping and
fingering the claimant would be precluded from her past relevant work.

9

10         The court cannot find any basis in the current record for plaintiff's argument that

11 the ALJ rejected Dr. Sharma's limitations on fingering/handling and alternate sit/stand.

12 Specifically, the court notes that the ALJ found the following residual functional capacity:

13         The claimant has the residual functional capacity to perform the
requirements of work including lifting and carrying from 10 pounds

14 frequently to 20 pounds occasionally, standing and/or walking for about 6
hours during an 8-hour workday, periodic alternate sitting and standing,

15 no kneeling, crouching, or crawling, occasional climbing, balancing,
stooping, handling and fingering, and moderate limitations in

16 understanding, remembering and carrying out detailed instructions and in
interacting appropriately with the general public;

17

18 Clearly, the ALJ accepted Dr. Sharma's limitations for both alternating between sitting and

19 standing and limitations to only occasional handling and fingering in his functional capacity

20 assessment.  Moreover, the hearing decision is clear that the ALJ acknowledged these limitations

21 and, nonetheless, gave "considerable weight" to Dr. Sharma's assessment.[3]

22 / / /

23 / / /

24

25      [3]      To the extent plaintiff argues that the ALJ erred by failing to include these
limitations in questions posed to the vocational expert, that argument will be addressed below in

26 section III.C. of this opinion.

1    However, the court agrees with plaintiff that the ALJ failed to address the time

2  limitation Dr. Sharma associated with plaintiff's sit/stand restriction.  In particular, while the

3  ALJ accepted Dr. Sharma's sit/stand limitation, the ALJ did not address Dr. Sharma's opinion

4  that plaintiff could not sit for more than 30 minutes at a time.  To the extent the ALJ rejected this

5  aspect of Dr. Sharma's opinion by not including it in his residual functional capacity assessment

6  or hypothetical questions posed to the vocational expert, the ALJ erred by not providing reasons

7  for doing so.

8          2.   Dr. Paxton

9    In a January 9, 2001, mental residual functional capacity assessment, Dr. Paxton

10 stated that plaintiff was moderately limited in "[t]he ability to interact appropriately with the

11 general public" and concluded his evaluation by stating that plaintiff "cannot work with public."

12 Plaintiff characterizes Dr. Paxton's opinion in this regard as precluding occupations where she

13 would have any public contact.  In other words, plaintiff asserts that Dr. Paxton opined an

14 absolute limitation to no public contact.  As to Dr. Paxton's opinion, which was denoted as

15 Exhibit 5F when presented to the ALJ, the ALJ stated:

16          At the fifth and final step of the evaluation process, in view of the
           claimant's non-exertional limitations the vocational expert was examined
17          as to the availability of alternative jobs in view of the limitations set forth
           herein, including moderate limitations in the ability to understand,
18          remember and carry out detailed instructions and in interacting
           appropriately with the general public. . . .  (Exhibits 5F, 8F).[4]
19

20 Plaintiff argues the ALJ erred by accepting a moderate limitation for public contact and rejecting

21 an absolute limitation to no public contact without giving any reasons for doing so.

22    Dr. Paxton's source statement is ambiguous.  On the one hand, Dr. Paxton found

23 plaintiff's ability to interact appropriately with the public to be "moderate."  On the other hand,

24 he concluded his assessment with the words: "Cannot work with public."  Under this court's

25 _____

26    [4]      Exhibit 8F is Dr. Swan's report.

13

1    standard of review, where evidence is susceptible to more than one rational interpretation, one of

2    which supports the ALJ's finding, the ALJ's finding must be accepted.  See Thomas, 278 F.3d at

3    954.  Here, the ALJ adopted the less restrictive opinion.  The court finds this to be one rational

4    interpretation of Dr. Paxton's statement.  It is, of course, not the only rational interpretation.

5    Therefore, because Dr. Paxton's opinion is ambiguous and subject to more than one rational

6    interpretation, the ALJ's interpretation must be accepted.  However, the court cannot accept an

7    ALJ's conclusion that is not based on proper legal analysis and substantial evidence.  See

8    Tackett, 180 F.3d at 1097; Burkhart, 856 F.2d at 1338.   The problem with this case is that the

9    ALJ did not provide any analysis as to the ambiguity.  Rather, the ALJ accepted, without

10   comment, one interpretation over the other.  Because the ALJ did not comment on the ambiguity,

11   this court cannot determine whether the ALJ's acceptance of one interpretation over the other is

12   based on proper legal analysis and substantial evidence.

13          **B.      Plaintiff's Credibility**

14          The Commissioner determines whether a disability applicant is credible, and the

15   court defers to the Commissioner's discretion if the Commissioner used the proper process and

16   provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An explicit

17   credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

18   F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

19   821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

20   and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

21   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

22   credible must be "clear and convincing."  See id.

23          If there is objective medical evidence of an underlying impairment, the

24   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

25   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

26   341, 347-48 (9th Cir. 1991) (en banc).  The Commissioner may, however, consider the nature of

14

the symptoms alleged, including aggravating factors, medication, treatment, and functional

restrictions.  See id. at 345-47.  In weighing credibility, the Commissioner may also consider:

(1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms.  See

Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

As to plaintiff's credibility, the ALJ stated:

. . . At the hearing before the undersigned on July 12, 2004, the claimant
testified that she stopped working due to her heart attack, which was
caused by stress and panic attacks.  She has attempted to sell her artwork
that she has done at home but she has never been released to return to
work.  She isn't currently undergoing mental health treatment.  Her carpal
tunnel is painful.  She has not had surgery for it but braces do help.  Her
pain is occasional and makes it hard to grasp with her right hand and she
also has limited strength in her left hand.  She doesn't take any pain
medications except for one aspirin a day, which is for her heart.  Moving
to a small city has reduced her stress because there are fewer people.
Sometimes her hands throb and she has much pain.  She is able to do some
housecleaning and limited cooking due to her hands.  Her condition has
been the same for the past 2 years but is a little better since 2000.  She was
still unable to work in 2002.  She has no confidence due to the way she
was treated at her last job.  Her worst condition is her mental condition
while her hands limit her lifting and normal work activities.  She stopped
taking her Wellbutrin because her drug coverage stopped.  She took art
classes at a college in 2002 and parts of 2003 and finished it in 3
semesters but had to drop classes because it was too much for her.
However, because of her mental and physical impairments she couldn't
work at a regular job when she was attending college and she would miss
some school.  Her medications caused her feet to swell.  Her feet would
throb and hurt and she would have to raise them.  She also has back pain
on and off, which started in 2003.  She doesn't go to her doctor due to the
time and distance it takes to get to Sacramento.  Her only income is from
selling her house.  She does have Kaiser medical insurance and pays her
premiums.  Her last trip to Kaiser was in June 2003.  She is limited to
sitting 30 minutes due to lower back pain and standing for 15 minutes and
could only walk around in her yard.  She lives alone and does her own
driving and limited yard work but hasn't done any painting or artwork for
the past year because she is depressed.  She has no friends or social
activities.  She does her own grocery shopping and talks to a friend only
on the phone.  She has a horse, 2 donkeys, a dog and a bird.  She doesn't
lift the animals' food but does clean up after them.

. . . [T]he undersigned cannot credit the claimant's testimony regarding her stated 15-minute standing limitation.  Her wide-ranging daily activities demonstrate that she remains quite functional.  Indeed, during a significant portion of her disability she attended art college and she performs her own driving, household chores, yard work, grocery shopping, and takes care of several large and small animals on her property and is otherwise quite independent and lives by herself.  Further, her lack of medical care between 2003 and 2004 is also some evidence that the claimant herself did not believe her impairments were so significant that she needed to see a medical provider, which she testified she still has through Kaiser.  Although she also testified that her primary problem is depression she undergoes no treatment except for using medication.  Though she also claimed that she had severe low back pain from a 2003 injury, she also indicated that it occurs on and off and she is not undergoing any treatment for it and takes no pain medications (aside from an aspirin a day for her heart).  Further, the x-rays have shown only mild arthritis of the thoracic spine.  Although the claimant is also obese her treatment source indicated that at 215 pounds her body mass index (BMI) was 37, which does not indicate "extreme" obesity under the National Institute of Health Obesity Guidelines.  Although the claimant may be depressed her treatment throughout the period of her alleged disability has been fairly minimal and has generally improved taking medication and undergoing a brief period of therapy.  Although she was also treated by . . . Dr. Silva, such treatment was in conjunction with her worker's compensation claim and is therefore of limited value.  In any event, she has not undergone any such therapy for several years and although Dr. Silva's assessment of the claimant's depressive disorder included a GAF of 55, that was for the purposes of her pending worker's compensation claim and has not been corroborated by any other examination or treatment for several years and is otherwise of limited value and accorded little weight.

Plaintiff argues that the ALJ erred by failing to specify which allegations of pain and other symptoms he found to be not credible.  She also argues that the ALJ failed to follow Social Security Ruling ("SSR") 96-7p, which requires the ALJ to consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

16

1    Having carefully considered the plain language of the ALJ's analysis of plaintiff's

2    credibility, as set forth above, the court simply cannot find any basis for plaintiff's arguments.

3    First, contrary to plaintiff's assertion, the ALJ did in fact specify which items of plaintiff's

4    testimony he found not to be credible.  Specifically, it is clear that the ALJ discredited plaintiff's

5    testimony as to her: (1) 15-minute standing limitation; (2) depression; and (3) low back pain.

6    Second, it is also clear that, as to these three items of plaintiff's testimony, the ALJ considered

7    such factors as daily activities, duration and frequency of symptoms, medications, and treatment

8    history.  The court, therefore, concludes that the ALJ's analysis was appropriate.[5]

9        **C.    Hypothetical Questions**

10    Hypothetical questions posed to a vocational expert must set out all the

11    substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

12    Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

13    limitations, the expert's testimony as to jobs in the national economy the claimant can perform

14    has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

15    the ALJ may pose to the expert a range of hypothetical questions, based on alternate

16    interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

17    determination must be supported by substantial evidence in the record as a whole.  See Embrey

18    v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

19    At the July 12, 2004, hearing, the ALJ posed the following hypothetical questions

20    to the vocational expert:

21        Q:    25 pounds frequently, stand and/or walk with normal
          breaks, about six hours in an eight-hour workday, sit with normal breaks
22        about six hours in an eight-hour workday.  Pushing and pulling is
          unlimited.  Is moderately limited in ability to understand and remember
23        and carry out detailed instructions.  Is moderately limited in ability to
          interact with the public.  And moderate is 25 percent of normal. . . .  Now
24        just based on these limitations, as indicated, would the Claimant be able to

25    _____

26        [5]    Plaintiff does not argue that any of the reasons given by the ALJ fails to
     accurately reflect the record.

17

1    do any of her past relevant work?

2              * * *

3              A:     She should be able to do her previous work.

4              * * *

5              Q:     All right.  Now let me give you hypothetical two.  The
6    same physical limitations as indicated earlier, with the additional
     limitations.  Fine manipulation and gross manipulation, she is limited.
7    Her right hand, she's limited in repetitive grasping.  And her left hand, she
     has diminished strength.  And these limitations are moderate limitations
8    with regard to grasping with the right hand, and with diminished strength
     with the left hand.  Did you get that?

9              * * *

10             Q:     All right.  With that additional, with her grasping and
11   strength, can she still do any of her past relevant work?

12             A:     No.  She cannot, because the DOT specifically says that
     such a Claimant would have to reach hands and fingers, grasp –

13             Q:     Are there any jobs in the regional or national economy that
14   she might be able to do considering those limitations?

15             A:     I do not believe so.

16             * * *

17             Q:     Okay.  Let me give you hypothetical three. . . .

18             * * *

19             Q:     All right.  Again, the same parameters as indicated in the
     hypo one, would be physical limitations.  But when it comes to the
20   grasping and the fine manipulation, the limitations are slight.  In other
     words, ten percent of normal, not moderate, but slight, and everything else
21   being the same, remaining the same with the mental, would there be any
     difference in your assessment?

22             A:     Yes.  That would change my assessment that she could
23   probably do some jobs in the national economy.

24             Q:     She wouldn't be able to do her past relevant work, but
     some jobs in the national economy?

25             A:     That's correct.

26             Q:     And would that be the sedentary to light work?

18

1      A:      Yes.

2    In addition these questions, plaintiff's counsel asked the following question:

3          Q:      A couple of questions.  If [we] use his Honor's first
          hypothetical question, only instead of saying that she can do 75 percent of
4          normal, as to complex tasks and the public, let's just say that she's limited
          to medium work and she's limited to simple repetitive tasks, non-public.
5          Would that allow any past relevant work?

6          A:      No.

7    Plaintiff argues that the ALJ's hypothetical questions failed to consider her limitations for

8    handling/fingering and alternate sit/stand, as opined by Dr. Sharma, and no public contact, as

9    opined by Dr. Paxton.

10          1.      Dr. Sharma's Limitations

11          As to limitations for handling/fingering and sit/stand, these come from Dr.

12   Sharma's assessment, discussed above.  The court finds that the ALJ accepted these limitations.

13   Specifically, Dr. Sharma opined that plaintiff was limited to only occasional fingering/handling.

14   The ALJ adopted this opinion by concluding as to plaintiff's residual functional capacity that she

15   was limited to "occasional . . . handling and fingering."  Dr. Sharma also opined that plaintiff

16   was limited to sitting for no more than 30 minutes at a time and must alternate between sitting

17   and standing.  Again, the ALJ accepted Dr. Sharma's alternate sit/stand limitation by concluding

18   that plaintiff is limited to "periodic alternate sitting and standing."

19          Defendant contends that, while the ALJ accepted Dr. Sharma's opinion, the ALJ

20   chose not to accept the entire opinion "due to [the ALJ's] credibility assessment."  This

21   contention is not, however, supported by the record.   In his credibility assessment, discussed in

22   detail above, the ALJ discredited plaintiff's testimony as to her: (1) 15-minute standing

23   limitation; (2) depression; and (3) low back pain.  The ALJ's credibility discussion said nothing

24   about sitting for more than 30 minutes at a time with alternate sit/stand.  Therefore, contrary to

25   the defendant's contention, the ALJ did not reject the 30-minute sit limitation or the alternate

26   sit/stand limitation in the credibility analysis.  Defendant does not address plaintiff's argument

19

1  that the ALJ failed to include the occasional handling and fingering limitation.

2        With respect to the limitation on handling/fingering, the ALJ asked one question

3  assuming a slight limitation and another question assuming a moderate limitation.   Ultimately,

4  the ALJ based her conclusion on the vocational expert's response to the question assuming only

5  a slight limitation.  Given that Dr. Sharma's opinion is not couched in these terms (Dr. Sharma

6  expressed the opinion that plaintiff was limited to occasional fingering and handling), the

7  question for this court is whether a limitation to occasional fingering and handling represents a

8  slight limitation or a moderate limitation.  Dr. Sharma's assessment reflects that, when asked

9  how plaintiff's handling/fingering limitation affects her ability to work, Dr. Sharma noted that

10  plaintiff could do such tasks only occasionally.  He did not accept the other options – frequently

11  or constantly.  It follows that, if Dr. Sharma had opined that plaintiff could do tasks involving

12  fingering and handling either frequently or constantly, plaintiff would not be as limited as

13  "occasionally" suggests.  Thus, by stating that plaintiff could only occasionally do fingering and

14  handling tasks, he must have selected the more restrictive measure for her limitation.  This is

15  inconsistent with the ALJ's hypothetical question, upon which the disability determination is

16  based, that plaintiff's limitation for handling/fingering is only "slight."  In fact, with a

17  "moderate" limitation to fingering/handling, the vocation expert testified that plaintiff would not

18  be able to perform her past relevant work or other jobs that exist in the national economy.

19        With respect to the limitation for sitting no more than 30 minutes at a time with a

20  alternate sit/stand option, the court rejects defendant's characterization of the ALJ's decision.

21  Specifically, the ALJ did <u>not</u> reject the 30-minute limitation in his assessment of plaintiff's

22  credibility.  Rather, he rejected plaintiff's stated limitation to standing for no more than 15

23  minutes due to back pain.[6]  Having carefully studied the hearing testimony, the court concludes

24

25      [6]    It is noted that, in one sentence in the hearing decision, the ALJ summarizes
26  plaintiff's testimony as follows: "She is limited to sitting 30 minutes due to lower back pain and standing for 15 minutes and could only walk around in her yard."  However, the ALJ specifically

1  that the ALJ failed to include Dr. Sharma's sit/stand limitation in the hypothetical questions

2  posed to the vocational expert.

3                 2.     Dr. Paxton's Limitation

4            As to an absolute limitation to no public contact, for reasons discussed above the

5  court is not able to determine whether the ALJ properly accepted such a limitation.  Specifically,

6  Dr. Paxton's opinion is subject to more than one rational interpretations but the ALJ failed to

7  comment on the ambiguity.   Because the court cannot determine whether the ALJ was correct in

8  accepting the interpretation that Dr. Paxton opined an absolute limitation to no public contact,

9  the court likewise cannot determine whether the ALJ erred by not including such a limitation in

10  his hypothetical questions.

11  **D.**     **Additional Medical Expert Testimony**

12            Plaintiff argues that the ALJ erred in not allowing for a supplemental hearing

13  because the Hearings Appeals and Litigation Law Manual ("HALLEX") requires one.  While

14  defendant is correct that the HALLEX is not binding, see Scheiker v. Hansen, 450 U.S. 758

15  (1981), given the errors outlined above, if there is another administrative hearing, plaintiff

16  should be afforded the opportunity to present medical evidence to address Dr. Sharma's report.

17  This is particularly appropriate if the Commissioner takes the position on remand that Dr.

18  Sharma's opinions should be discredited to some degree.

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24

25

26  discredited only the stated 15-minute standing limitation.  The ALJ did not comment on
plaintiff's statement that she is limited to sitting for 30 minutes.

# IV.  CONCLUSION

The court finds that the ALJ erred with respect to consideration of Dr. Paxton's opinion.   As to this error, however, the court cannot say that benefits should be awarded.  If Dr. Paxton's opinion that plaintiff is limited to jobs with <u>no</u> public contact, it is still not clear, on the current record, whether she would be disabled.  Plaintiff's counsel asked the vocational expert to assume a restriction for no public contact whatsoever and opine whether such a restriction would allow any past relevant work.  To this hypothetical, the vocational expert answered that it would not.  On follow-up questioning, the vocation expert further testified that, assuming such a limitation, plaintiff would not have any transferable skills.  Plaintiff's counsel did not, however, ask whether plaintiff would be precluded from other work existing in the national economy even assuming a restriction to no public contact.  Therefore, the current record is devoid of vocational testimony which would allow this court to conclude that benefits should be awarded solely based on a restriction to no public contact.  On remand, if the ALJ concludes that Dr. Paxton opined an absolute limitation, a vocational expert will need to be questioned regarding the effects of such a limitation on plaintiff's ability to do work other than her past relevant work and work involving transferable skills.

As to a limitation to no contact with the public, because the ALJ did not address the ambiguity in Dr. Paxton's opinion, the court cannot say whether the ALJ erred by failing to include such a limitation in her hypothetical questions.   As to Dr. Sharma's opinion, the ALJ erred to the extent she rejected the 30-minute sitting limitation without comment.

Finally, with respect to hypothetical questions posed to the vocational expert, the court finds on the current record that the ALJ erred by failing to include a complete and accurate description of Dr. Sharma's limitations.  Specifically, the ALJ erred by characterizing Dr. Sharma's report as expressing an opinion that plaintiff has a slight fingering/handling limitation. In fact, Dr. Sharma opined a more moderate limitation.  Given a moderate (as opposed to slight) limitation to fingering/handling, and in light of plaintiff's medically established carpal tunnel

1  syndrome, it appears that substantial evidence would support a finding that plaintiff is disabled

2  based on the vocational expert's testimony that, assuming such a restriction, plaintiff would not

3  be able to do her past relevant work or other jobs in the national economy.

4          For the foregoing reasons, this matter will be remanded under 42 U.S.C. § 405(g)

5  for further development of the record and further findings addressing the deficiencies noted

6  above, or an award of benefits.

7          Accordingly, IT IS HEREBY ORDERED that:

8          1.      Plaintiff's motion for summary judgment is granted;

9          2.      The Commissioner's cross motion for summary judgment is denied;

10          3.      This matter is remanded for further proceedings consistent with this order;

11  and

12          4.      The Clerk of the Court is directed to enter judgment and close this file.

13

14  DATED:   September 26, 2006.

15

16                                        CRAIG M. KELLISON
17                                        UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26